*875 MEMORANDUM *
Plaintiff-Appellant Ronald Godwin appeals from the district court’s grant of summary judgment in favor of Defendants-Appellees Rogue Valley Youth Correctional Facility (“RVYCF”), the Oregon Youth Authority (“OYA”),[1] Superintendent Ken Jerin, Director Collette Peters, and Assistant Director Jean Straight[2] (collectively, “Defendants”). The district court determined that Godwin was not wrongfully terminated in violation of his First Amendment rights to association and free speech. We reverse the district court’s grant of summary judgment and remand for further proceedings. Because the parties are familiar with the facts of this case, we do not repeat them here.
To state a prima facie case for his hybrid speech/association claim, Godwin must show that: (1) he engaged in protected speech and/or association, (2) Defendants “took an adverse employment action” against him, and (3) his speech and/or association was “a substantial or motivating factor for the adverse employment action.” Hudson v. Craven, 403 F.3d 691, 695 (9th Cir. 2005) (quoting Thomas v. City of Beaverton, 379 F.3d 802, 808 (9th Cir. 2004)). It is undisputed that Defendants terminated Godwin because of his expressive conduct and association with the Va-gos motorcycle club. Thus, the question before us is whether Godwin’s wearing of Vagos insignia (“colors”)[3] and association with Vagos is protected under the First Amendment, which in this context requires that his expression/association relates to a matter of public concern. See Connick v. Myers, 461 U.S. 138, 149, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (holding that a public employee is protected against adverse employment action only as to expression that can be said to “touch upon a matter of public concern”).
Godwin’s expression/association was related to a matter of public concern, the scope of which we construe “broadly.” Ulrich v. City & County of San Francisco, 308 F.3d 968, 978 (9th Cir. 2002). “Speech involves a matter of public concern when it can fairly be considered to relate to ‘any matter of political, social, or other concern to the community.’” Johnson v. Multnomah County, 48 F.3d 420, 422 (9th Cir. 1995) (quoting Connick, 461 U.S. at 146, 103 S.Ct. 1684). “[Pjublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication.” City of San Diego v. Roe, 543 U.S. 77, 83-84, 125 S.Ct. 521, 160 L.Ed.2d 410 (2004) (per curiam). Here, Godwin’s wearing of the Vagos insignia and associating with Vagos members could be perceived as public support of Vagos—i.e., approving of the activities of a perceived criminal organization. This is a matter of interest to the community. Further, the criminality of motorcycle clubs is a topic of “legitimate news inter *876 est.” Id.; see also Roe v. City & County of San Francisco, 109 F.3d 578, 585 (9th. Cir. 1997) (“To deserve First Amendment protection, it is sufficient that the speech concern matters in which even a relatively small segment of the general public might be interested.”); accord Piscottano v. Murphy, 511 F.3d 247, 274-76 (2d Cir. 2007).
As Godwin established a prima facie case of retaliatory termination, the burden shifts to the government to demonstrate that its legitimate interest “in promoting the efficiency of the public services it performs through its employees” outweighs Godwin’s First Amendment right. Rankin v. McPherson, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (quoting Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)); see also Hudson, 403 F.3d at 695.
Here, the Pickering balancing test does not favor the government as a matter of law. With respect to the functioning of a public enterprise, “[a]n employer may not interfere with an employee’s First Amendment rights unless there is evidence that the employee’s actions have actually disrupted the workplace or are reasonably likely to do so in the future.” Nichols v. Dancer, 657 F.3d 929, 931 (9th Cir. 2011). Critically, “[s]imply saying that there has been or will be disruption, without supporting evidence, is not enough.” Id. To show actual or potential disruption, pertinent considerations include whether the speaker’s expression impeded his job performance, impaired personnel relationships (including “discipline by superiors or harmony among co-workers”), or otherwise interfered with “the regular operation of the enterprise.” Rankin, 483 U.S. at 388, 107 S.Ct. 2891.
Nothing in the record on summary judgment indicates that Godwin’s expression impeded the performance of his job duties, adversely affected discipline or personnel relationships, or interfered with the work of the OYA. Nor does the record indicate that his expression would be reasonably likely to disrupt the workings- of the OYA in the future. Godwin had been affiliated with Vagos for his entire fourteen-year tenure with the OYA, which was known to several of his co-workers, including supervisors. Indeed, Godwin had arranged “motorcycle shows” for the OYA youth, to which he would invite members of motorcycle clubs to speak. There are no complaints in the record regarding Godwin inviting these motorcycle club members to speak to the youth. Instead, he has offered evidence that he used “his past experiences and involvement in Vagos ... to help the youth understand, no matter who they are and what they have done[,] they can turn their life around and be positive people.” Additionally, Godwin was viewed as an exemplary employee; he received an award for his “outstanding service” four months prior to his termination, and his co-workers affirmed his value to the OYA through a letter of support. Defendants’ purported fears of future disruption are also unsupported in light of the fact that, upon being informed of Defendants’ concerns about his association with Vagos, Godwin immediately offered to never again wear his Vagos colors or attend Vagos events.
On this record, where there is no evidence of actual disruption and Defendants’ predictions of future disruption are purely speculative, the district court erred in granting summary judgment in favor of Defendants.[4] See Nichols, 657 F.3d at 933- *877 34 (“[A]n employer cannot prevail under Pickering based on mere speculation that an employee’s conduct will cause disruption.”).
REVERSED AND REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. The OYA operates RVYCF and is a department of the State of Oregon.

. Though Defendants appear to have asserted the defense of qualified immunity in their answer to the complaint, the issue was not raised on appeal, so we do not address it here. Nor do we address whether the Eleventh Amendment has any application here.

. Wearing motorcycle club insignia is expressive conduct because it conveys a message that the wearer supports or is proud to be affiliated with the organization. See, e.g., Sammartano v. First Judicial Dist. Court, 303 F.3d 959, 966-67 (9th Cir. 2002), abrogated on other grounds by Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 21, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).

. In light of this holding, we need not reach the question of whether Godwin waived his pure association claim.